Sarah J. Starr, Appellant, *v.* The North Side Traction Company, Lessee of the Federal Street and Pleasant Valley Railroad and the Federal Street & Pleasant Valley Passenger Railway Company.

*Street railways—Running cars over switch—Injury to property—Damages—Nonsuit.*

In an action against a street railway company to recover damages for cracks in the wall of a building, alleged to have been caused by the continuous bumping of cars over a switch, a nonsuit is properly entered where there is no evidence that the bumping of the cars was the real cause of the cracks in the house, and no evidence of any improper construction of the switch, or of negligence of the defendant.

Argued Oct. 28, 1899. Appeal, No. 126, Oct. T., 1899, by plaintiff, from order of C. P. No. 2, Allegheny Co., April T., 1897, No. 330, refusing to take off nonsuit. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Trespass for injuries to a house.

The facts appear by the opinion of WHITE, P. J., on motion for nonsuit, which was as follows :

The plaintiff owns a lot in Bellevue, fronting on Lincoln

avenue, and in 1881–1882 built a brick house on it which was not entirely finished at that time, there being further work done in 1890. The house had a front of about forty-one feet, extending back thirty-three feet, with a kitchen additional, making five rooms on the first floor and six on the second; but the mansard has not yet been finished. This house stands about fifty feet back from the avenue, and about eighty feet from the track of the defendant railway.

There is no controversy that the defendant company had a right to construct its tracks on Lincoln avenue and also a right to construct a switch there. These tracks were constructed about 1893: a double track from the city down to Bellevue, one track extending some distance beyond that, and the switch was to connect these two tracks in front of the plaintiff's lot.

The allegation on the part of the plaintiff—the basis of this action—is that her house was injured by the cars passing over that switch; and the allegation is that the switch was either unskillfully or improperly constructed; the evidence is not that any injury was sustained at any particular time, but it was continuous from 1893 to the present time. The original switch was in operation from 1893 to 1897, when a new switch was put in of a little different pattern. There is no evidence to the contrary that this switch, put in in 1893, was the usual and ordinary switch used by these railway companies at that time; on the contrary, I think the evidence indicates that it was the usual switch in use at that time. There is no evidence of any defective construction of it except this, that there is some testimony that the switch was a little higher than the main tracks, and when a car came over the switch it bumped down when it came onto the main track. That is all the evidence of any improper construction of this switch or of any negligence of the defendant company. I see no evidence of any negligence in this case or any improper construction of that switch that would justify the case being sent to a jury. But, apart from that, I cannot see any evidence that would justify me in sending this case to a jury on the ground that plaintiff's house was injured by the bumping of the cars over this switch. There is a good deal of evidence of some cracks on the outside of the house, some cracks inside—small cracks. Some witnesses speak about cracks large enough to put a knife in; some say a quarter

of an inch at the widest part; there is some evidence of cracks
along the angle of the bay-window and also in the chimney.
We all know that these cracks may arise from a great many
causes. It is very common, as we all know, for cracks to be
inside of a house, in the plaster; and they may not be visible
for years, and yet finally manifest some cracks in the plaster.
So on the outside of the building there may be a settling of the
foundation, or a brick wall may be constructed negligently,
depending upon the character of the work very largely, the
mortar used, and the time in which it was constructed, by which
there would be little exterior cracks in a brick wall. The
theory is that the bumping of these cars caused the cracks in
the building. Now if the building was injured by the bumping
of the cars and the reverberation of the atmosphere, those walls
would be shaken. The evidence is that they are plumb—all
plumb, no injury whatever except that these cracks appear.
Now if there was any injury from the vibration of the car the
wall itself would be shaken. Plastering would fall out, mortar
would fall out or crumble, and the wall would be shaken from
its perpendicular. The witnesses testify that the walls of that
house are solid, stand firm, perfectly so, and the only defects
are these little cracks. They may arise from various causes,
and while these witnesses testify—the family—that they be-
lieve—perhaps testify honestly, too, to their opinion that they
came from the vibrations caused by the car, to me it is utterly
incomprehensible that the vibrations of the cars would cause
these cracks in a 13-inch brick wall where the walls are not
otherwise injured in any way. Vibrations that affect the wall
at all shake the wall and cause mortar to crumble and fall out,
or cause the chimney to shake—not a particle of evidence of
that. A crack in the chimney may occur from sinking or va-
rious causes, but if the chimney was affected by these various
vibrations it would show signs of vibration. There is nothing
of the kind in evidence. It is an illustration, too, of the esti-
mates that some property owners and others will make in a
case of this kind. While they admit the house will stand;
that there is no necessity of taking down any portion of it, yet
to fill up these little cracks they put the estimate at $1,100 to
$1,200—simply to fill up a few cracks—little cracks, on the
outside and the inside; they put the estimate at $1,200—$550

for repainting the whole house afterwards; and it is very con-
clusive evidence that nothing of that kind is necessary, because
this has been going on for five years, and yet never one cent
expended in the way of remedying any of these cracks or any-
thing of the kind. We all know that when a house is built, if
the lumber used in the building, doors, windows, mantel pieces
and so on, lintels of windows and other things, the joists and
the floors are not properly seasoned, there will be shrinkage of
this lumber, causing cracks at the joints of the walls and various
other places. All the cracks spoken of by all of these witnesses
may have been caused by something of that kind.

The defendant company has a legal right to maintain its
tracks on this avenue in front of the plaintiff's property. The
noise of passing cars may be some annoyance to persons living
on the line of the street. It may sometimes waken them up at
night; it may cause some noise and inconvenience to all the
families along the line of the street; yet for such an inconven-
ience there is no legal remedy, and it is based upon this idea
that these street cars, like some steam railways, are for the
public benefit, and the little inconvenience that persons living
along the line of the road may sustain must yield to the public
necessity and demand for these modes of conveyance; and there
is a compensation in it because these very street railways en-
hance greatly the value of property along the line. I have no
doubt the plaintiff's property here is enhanced very greatly in
value by having the rapid transit cars running to the city—
probably worth one half more than what it would be without
them. We have around us, in these two cities, perhaps a dozen
places where the street car tracks cross the tracks of the steam
railways. In all such cases the rails are cut off—the rails of
the passenger railway are cut off, and the cars bump over the
rails of the steam railway, and I have no doubt make far more
noise, and bump more than it could be possible for these cars to
bump over a switch. Any person passing up Federal street in
Allegheny, where we see the cars passing every minute or two,
notices the wonderful bumping of the cars which are crossing
the two tracks, and so it is elsewhere where they cross these
tracks. Who ever heard of a claim that the walls of those
buildings were injured by the bumping of those cars? This is
the first time I ever heard of such a claim. It is for these two

reasons—first, that this action is based upon the alleged negligence of the defendant company, and I see no evidence that would justify me in sending it to the jury on that ground ; and, secondly, that I see no evidence that would justify the jury in finding that the plaintiff's house was injured in any way by the bumping of these cars over that switch—that the motion is sustained.

The court subsequently refused to take off the nonsuit, saying :

The facts of the case and the reasons for granting the nonsuit were stated at the time, taken down by the stenographer, written out by him and filed herewith. I am not convinced of error in granting the nonsuit, and the motion to take it off is refused. To which plaintiff excepts and bill sealed.

*Error assigned* was refusal to take off nonsuit.

*James Fitzsimmons*, with him *D. L. Starr*, for appellant, cited Lockhart v. Craig Street Ry. Co., 139 Pa. 419 ; Rogers v. Phila. Traction Co., 182 Pa. 473.

*Homer L. Castle*, *William A. Stone* and *W. P. Potter*, for appellee, were not heard.

PER CURIAM, November 6, 1899 :

This appeal is from the judgment of the court below refusing to take off the nonsuit ordered at the trial of the cause.

Our consideration of the evidence has satisfied us that there was no error in thus refusing to take off the compulsory nonsuit. The evidence relied on by the plaintiff was insufficient to justify the submission of her case to the jury.

For reasons given by the learned judge in his opinions ordering the nonsuit and afterwards refusing to take it off the judgment is affirmed.