## Macrane et ux. v. Philadelphia Transportation Co. et al.

228

*Louis J. Di Giacomo*, for plaintiffs.

*I. K. Levy, F. Ballard* and *H. C. Connor, Jr.*, for defendants.

REIMEL, J., May 24, 1954.—Plaintiffs filed a complaint in equity asking that defendants be compelled to repair the paving of the roadbed as well as the rails and ties in and about the intersection of Fifteenth and Bigler Streets in Philadelphia; that the city be enjoined from using these streets within 100 yards of that intersection; and that the Philadelphia Transportation Company be enjoined from operating its cars at any point within 100 yards of the intersection; that the conditions of disrepair constitute a nuisance; that vibration due to vehicles passing over the roadbed, rails and ties have caused excessive vibration and resultant damage to plaintiffs' property, and that defendants be held responsible for damages in the sum of $3,493.85 resulting from the maintenance of the nuisance.

A final hearing was held after preliminary objections were dismissed and answers were filed.

The issues herein are whether the alleged condition of disrepair of the paving and tracks constituted a nuisance and was the proximate cause of the damages to the premises owned by plaintiffs.

## Findings of Fact

1. Plaintiffs have owned and occupied premises 2901 South Fifteenth Street, Philadelphia, Pa., as tenants by the entireties since September 19, 1938.

2. The premises, located at the southeast corner of Fifteenth and Bigler Streets, consists of a retail grocery store and dwelling.

3. The premises is a two-story combination store and dwelling, corner property, and is one of a row of similarly constructed structures. The exterior walls are of brick with the interior comprising a basement, a first and second floors, the latter two of which have plastered walls and ceilings. The basement walls are cement plaster on stone and the joints supporting the first floor show signs of termite damage.

4. The Philadelphia Transportation Company is a Pennsylvania corporation engaged in business as a public carrier in the City of Philadelphia and is the owner of the rails, ties and similar appurtenances in the roadbed.

5. There is a single set of trolley rails running east and west on Bigler Street, and a single set of trolley rails running north and south on Fifteenth Street. Both sets of rails cross each other at the intersection of said streets.

6. The Philadelphia Transportation Company operates street railway service over the track and track structures located in the bed of these streets.

7. The City of Philadelphia is a municipal corporation duly organized and existing under the laws of the State of Pennsylvania, and has under its care and direction, supervision, control and maintenance of the streets, roads and highways within its corporate limits.

8. On July 7, 1907, an agreement was entered into between the City of Philadelphia and the predecessor of Philadelphia Transportation Company which relieves the Philadelphia Transportation Company of

paving obligations in streets occupied by its tracks in return for an annual payment by it to the city.

9. Bigler and Fifteenth Streets are two of the many roads, streets and highways maintained by the city for public use.

10. Bigler Street between Broad and Fifteenth Streets was originally paved with asphalt by the city in 1924 and repaved in 1953.

11. The cartway on each of the streets consists of asphalt shoulders, two runner rows of granite block along the outer edge of each rail, and granite block paving between the rails.

12. Bigler and Fifteenth Streets are heavily traveled by trucks, trolley cars and other vehicles.

13. The average weekday number of trolley cars passing over the intersection of Fifteenth and Bigler Streets was 470 as of September 1949 and 390 as of September 1953.

14. The City of Philadelphia operates dump trucks on Fifteenth Street at its intersection with Bigler Street.

15. In 1951 and 1952, large dump trucks of the McCloskey Company made 50 to 75 trips per day past plaintiffs' premises.

16. The average weekday number of trolley cars passing over the tracks in Bigler Street and over the crossing is approximately 195, representing the northbound operation of rail route no. 2.

17. Plaintiffs on numerous occasions during the years 1950 and 1951 notified defendants of the poor condition and poor state of repair of the paving, rails, ties, and appurtenances at the intersection and in the area adjacent thereto.

18. Plaintiffs' house shook and vibrations were felt when vehicles and trolley cars passed over the streets adjacent to plaintiffs' property.

19. Since 1946 plaintiffs removed pulverized brick and mortar from their basement and from the wall of their property on Bigler Street.

20. Cracks in the walls and ceilings of plaintiffs' property appeared during the year 1946.

21. A "pot hole" existed in the bed of Bigler Street approximately 75 feet east of plaintiffs' house in 1953.

22. Samuel Macrane, Sr., was an employe of the Acchione Contracting Company for a period of 22 years in a supervisory capacity, and that among his duties he hired and fired personnel; ordered material and equipment on the job and instructed job foremen what to tear out, remove or rebuild; and had experience in 150 street and road construction or surfacing jobs and approximately 30 jobs involving the installation, construction or removal of trolley rails or tracks.

23. Samuel Macrane, Sr., does not qualify as an expert for the purpose of establishing causation between the movement of motor and trolley traffic on Fifteenth and Bigler Streets, and the alleged damage to his house.

24. Daniel Acchione, a witness for plaintiffs, a contractor and professional engineer, is a partner of and engineer with the Acchione Contracting Company, and with the exception of the period of five years in the engineering corps of the United States Army was associated with the company for many years. His principal duties have consisted of the establishment of lines and grades and computation of construction costs.

25. Daniel Acchione established the elevations and depressions at certain points in the street car rails and the granite block runners along the street car rails, and the difference in elevations of rails in Bigler Street.

26. Daniel Acchione is not qualified as an expert to testify as to the transmission of vibrations through various subsurface soil formations.

27. The subsurface soil in the area of the intersection of Fifteenth and Bigler Streets was composed of a mixture of clay, cinder, brick, broken concrete and other types of earths.

28. A subsurface composed primarily of cinder will transmit vibrations. A subsurface composed of clay would not readily transmit vibrations. A subsurface consisting primarily of broken brick, broken concrete, clay, etc., would not readily transmit vibrations.

29. The underpinning or foundation of plaintiffs' premises was defective.

30. The brick addition which William Di Antonio constructed at the rear of plaintiffs' property in 1949 is in perfect condition.

31. The tracks on Bigler Street between Broad and Fifteenth Streets were first put into operation in 1917; the track crossing at Fifteenth and Bigler Streets was laid in May 1926, and replaced with an improved type in 1936.

32. The tracks and track structures in Bigler Street were renewed in June 1953.

33. The Philadelphia Transportation Company has inspected the tracks and recorded defects or conditions needing repair or renewal.

34. In November 1951 the then General Superintendent of Tracks of Philadelphia Transportation Company inspected the track crossing and adjacent rails at the intersection and found the track crossing to be free from cracks or fractures and in a very solid condition. Another inspection of this crossing was made by him on May 27, 1953, and very little difference in the condition of the crossing was found.

35. That official in his inspections of November 1951 and of May 27, 1953, of the track in the bed of Bigler Street between Broad and Fifteenth Streets found that the alignment and grade were in good operational condition.

36. An inspection of the track in Bigler Street between Broad and Fifteenth Streets on June 4, 1952, disclosed the following defects at the points indicated: (a) 50 feet west of the west curb line of Broad Street 3 feet of high block at 1½ inches height; one cupped joint along the north rail and one broken joint on the south rail; (b) 50 feet east of the east curb line of Carlisle Street the railhead measurement was ¾ of an inch (1³⁄₃₂ inches: normal) on the north and the south rail with the gauge being 5.23 feet wide (5.19 feet: normal) ; (c) at the east curb line of Carlisle Street a cupped joint on the north rail and on the south rail; (d) at the intersection of Carlisle and Bigler Streets the north rail showed signs of working for a distance of 25 feet; (e) 15 feet west of the west house line of Carlisle Street the north rail showed signs of working for a distance of 30 feet and also one cupped joint; (f) 40 feet east of Fifteenth Street there was a ¼ inch thickness of railhead at the car stop and the gauge was 5.21 feet.

Of the items listed above only item (f) occurred at a location opposite plaintiffs' premises, all of the other items occurring at locations east of, and distant from, the premises involved.

37. The difference in elevation between one joint of the broken rail and the other joint thereof is approximately one-quarter inch. The broken joint is more than 100 feet distant from plaintiffs' property.

38. In 1953 there were elevations and depressions, varying in depth or height from one-quarter inch to three quarters of an inch, along the granite block runners adjacent to the street car rails on Bigler Street between Broad and Fifteenth Streets.

39. The distance from Fifteenth Street to Broad Street is 484 feet, from Fifteenth Street to Carlisle Street is 171 feet, from Carlisle Street to Broad Street is 313 feet, and plaintiffs' premises occupy approxi-

mately one half of the block between Fifteenth Street and Carlisle Street.

40. Plaintiffs' requests for findings of fact nos. 1 to 7, 10 to 13 and 16 are affirmed. Nos. 8, 9, 14, 15, 17 and 18 are refused.

41. All of defendant Philadelphia Transportation Company's requests for findings of fact are affirmed except nos. 17, 22, 26, 33, 36 and 37, which are refused.

42. All of defendant city's requests for findings of fact are affirmed except no. 19, which is refused.

### Discussion

Plaintiffs, as owners and occupiers of the premises at the intersection of Fifteenth and Bigler Streets, known as 2901 South Fifteenth Street, in Philadelphia, Pa., have instituted the present action against the Philadelphia Transportation Company and the City of Philadelphia to abate a nuisance and to recover for alleged damages to the premises resulting from vibrations due to traffic passing over paving and track structures at or near the said intersection.

The essence of plaintiffs' action is based upon the theory that the vibrations caused by vehicles passing along Fifteenth and Bigler Streets were the proximate cause of damage to the premises. There was testimony that vibrations occurred whenever the vehicles passed over and struck the holes, ruts, cracks, depressions, cupped rail joints, broken rail joints, and other street and rail defects.

The test of proximate cause is whether the facts constitute a continuous succession of events so linked together that they become a natural whole, or whether the chain of events is so broken that they become independent, and the final result cannot be said to be the natural and probable consequence of the primary cause: Stemmler et al. v. Pittsburgh, 287 Pa. 365.

Plaintiffs failed to establish a causal relationship between the vibrations and the cracks in and about the premises. The witnesses, who testified that they felt the vibrations, readily admitted that the cracks found in the walls and ceilings could have been caused by vibrations from other sources. Some admitted that the cracks were of the character and extent that would be expected in a house of that age and character. The evidence discloses that the foundation of the premises was inadequate. The evidence also establishes that the composition of the subsurface soil structure included a mixture of clay, broken concrete, bricks, cinders, and various earths. Of these only cinders would transmit vibrations. On the basis of all the evidence submitted it cannot be said that the cracks are the natural and probable consequence of the vibrations.

In Starr v. The North Side Traction Company, etc., 193 Pa. 536, plaintiff sought to recover for cracks in the walls and ceilings of his house. In that case, as in the instant case, there was a lack of probative evidence which would establish a causal connection between the vibrations and the cracks.

The court finds that plaintiffs have not established that a nuisance exists and that the damages sustained by plaintiffs are not the natural and probable consequence of any defects in the paving of the roadbed, nor of the tracks and track structure, nor of negligence on the part of either defendant.

### Conclusions of Law

1. Equity has jurisdiction over this action brought to enjoin a nuisance.

2. The City of Philadelphia has a duty to maintain its streets in a condition of reasonable repair.

3. The Philadelphia Transportation Company has a duty to maintain its tracks, ties, appurtenances and rights of way in a state of reasonable repair.

4. Defendants owed a duty to plaintiffs to maintain their streets, rights of way, tracks and facilities in such a manner as to avoid harm to plaintiffs' property under the well-established maxim of "sic utero two ut alienum non laedas".

5. The defense of "governmental function" does not exempt the City of Philadelphia from liability for the maintenance of a nuisance.

6. The ownership, presence, operation or maintenance by defendant Philadelphia Transportation Company of track and track structures located in the bed of the intersection does not constitute a nuisance.

7. The operation and maintenance by the city of the cartways of Bigler and Fifteenth Streets does not constitute a nuisance.

8. The condition of paving at the intersection was not so deteriorated as to constitute a nuisance.

9. The subsurface soil structure at the intersection which was composed of clay, cinders, ash, broken concrete and other types of earth, did not constitute an inherently dangerous condition or the existence of a nuisance.

10. Defendant Philadelphia Transportation Company is not liable to plaintiffs for the cracks and other damage constituting the present condition of plaintiffs' premises.

11. Defendant city is not liable to plaintiffs for the cracks and other damages constituting the present condition of plaintiffs' premises.

12. Plaintiffs are not entitled to equitable relief or damages.

13. All of the Philadelphia Transportation Company's requests for conclusions of law are affirmed.

14. All of the city's requests for conclusions of law are affirmed except no. 4, which is refused.

15. Plaintiffs' requests for conclusions of law nos. 1, 2, 3, 4 and 9 are affirmed; nos. 5, 6, 7 and 8 are refused.

*Decree Nisi*

And now, to wit, May 24, 1954, upon consideration of the foregoing it is ordered, adjudged and decreed that plaintiffs' prayer for relief be denied. Plaintiffs to pay costs.

The prothonotary is directed to enter this decree nisi and to give notice thereof to the parties hereto, or their respective counsel, and unless exceptions thereto are filed within 20 days from the date hereof the prothonotary is directed to enter this decree as a final decree.